turned out to be a piece of junk. Coming on up. Let me proceed. Good morning. May it please the court. My name is Charlotte Taylor. I'm appearing on behalf of petitioner appellant Paul Torres. I'd like to reserve three minutes for rebuttal. Parties to this appeal agree that the district court applied the wrong legal rule. The only remaining issue before this court is whether to remand so the district court can develop the record. Remand is the ordinary course in a situation like this. No state or federal court has ever applied the correct legal standard to decide whether Mr. Torres should be allowed to develop the record in support of his constitutional claim. Normally the district court would make that determination under the corrected rule in the first instance. But the state argues that this court should take the unusual step of preemptively cutting off any record development. The state faults Mr. Torres for relying on an uncorroborated affidavit and it argues that without additional evidence his claims are impossible. This gets things backwards. Mr. Torres has diligently tried to develop additional facts. He cannot be faulted for not already having the evidence in hand to corroborate his affidavit. Mr. Torres is entitled under federal law to the opportunity to develop the record in his first federal habeas petition. Well, I think we do rely on Townsend v. Sane and related precedents that say that he's made out the showing that would entitle him to an evidentiary hearing. But it's also certainly open to this court to simply remand on narrower grounds that the district court should, in the first instance, evaluate how to proceed with his claims. He has satisfied the Townsend test, however. He alleges facts that, if true, would entitle him to habeas relief. And no state court ever held a full and fair hearing. That's undisputed. And he's also exercised the requisite diligence to try to develop the factual record pertaining to his claim, which is also undisputed. To be clear, the state doesn't even really directly dispute that the alleged facts, if true, would entitle him to habeas relief under Strickland. What it alleges instead is that the affidavit is facially implausible and we would take issue with that. But again, the affidavit, because it's not directly contradicted by the record and survives summary dismissal, needs to be taken as true. So you would agree that if somebody's affidavit said Martians have arrived, that would be something that's totally out of the ballpark, that that would not warrant an evidentiary hearing? Well, I think that if a petition were submitted with an affidavit saying that Martians had arrived, the district court would, under Rule 4, presumably dismiss that petition without even asking for a response from the state. If it developed later that there were allegations concerning Martians that the petitioner was attempting to develop, then I think the district court does have some discretion to manage the socket. Now, Townsend v. Saint does say that an evidentiary hearing is mandatory and there are valid precedents that we rely on that follow that rule. But again, this court doesn't need to decide whether in every single case an evidentiary hearing is mandatory. That issue would only be ripe if there were a remand. district court allowed some development, did not allow an evidentiary hearing, then we could be back arguing about the specifics of the Townsend rule and how it should apply in a case like that. If this is remanded to the district court, what sort of facts would the district court decide? I'm sorry, I didn't hear. What sort of facts? What facts would the district court decide? What is before it to be decided? I didn't hear a thing. So it stated that it would, you know, as an initial matter, if it didn't apply, which it turns out it does not apply, that it would maybe call for the prosecution to turn over its files, hear from the defense counsel, the trial counsel whose performance is alleged to be inadequate, and get an affidavit from defense counsel. And those would be initial steps so that, you know, Mr. Torres's claim could be evaluated. Again, the prosecution has never even been called upon to confirm or deny that there was a plea deal offered because the state court erroneously mistook this claim for a separate ineffective assistance claim that had already been denied. So even these sort of minimum facts are not in the record through no fault of Mr. Torres's. Your theory is that there's ineffective assistance of counsel during the plea bargaining. Yes. And what was ineffective about it? That another deal was offered to defense counsel and he did not pass it on to your client? It was that the prosecution, so there were three central counts in the indictment, all of which were sort of drug charges relating to the same underlying conduct, and they each carried separate minimum sentences. The plea deal was that only one of those, he would plead guilty to one of those and the remaining counts would be dismissed. And the ineffective assistance is that his counsel told him that that wasn't an advantageous plea deal because the three separate sentences, if he was convicted of all three counts at trial, would not run consecutively, that they would run concurrently so that there was no practical advantage to accepting the plea deal. And that is a type of incorrect advice that this court has held previously as a matter of law is ineffective assistance during plea bargaining. So at least based on that statement, it sounds like you're saying there wasn't a disagreement as to a deal being offered and what that deal was, but rather as to the advice he got with respect to that deal. Is that correct? Well, again, the state doesn't directly, there's no evidence one way or another as to whether the plea deal was offered. The state has never confirmed or denied that. Now it's, you know, in over 90% of cases, plea deals are offered, so it seems very likely and they don't seriously deny that one was offered. But again, we don't have the specifics. They haven't, yeah, we don't have the specifics. And then the further question is what advice was given, which is why the district court stated that if EDPA did not apply, that she would ask for some sort of response from defense counsel. So would it be fair to say that if we simply reverse that, probably what the district court would do would be to call for some type of paper response and look at that and then decide if a full evidentiary hearing was required? Certainly that would be what the district court indicated that she's likely to do in a sound manner proceeding. Now, again, we would argue that an evidentiary hearing is called for and the district court would make a determination. Just hypothetically, if the paper response were to be, we never offer plea deals. The U.S. attorneys for the past 10 years in this district never offered a plea deal. You know, you might be worse off. He would certainly be worse off. But, I mean, he's here to try to develop that record and he alleges that the plea deal was offered. Let me ask you about this on sort of the more abstract legal basis. Their basis for even getting into this is to say that Harrington versus Richter says that when a state court comes to a conclusion, albeit without reasoning, that if there is plausible reasoning for it, then the state wins. Your counter to that is, yeah, but here there was not no reasoning. There's clearly wrong reasoning. And they say, in effect, we should extend or stretch out Harrington into this. Has this been raised in other courts? Were you able to find anything where this argument has been made and either upheld or refuted? Yes, it has. I think we cite these cases in a footnote in our initial brief. But most recently the Third Circuit had an in-bank decision in Dennis v. Wetzel where they held that Harrington v. Richter should not be extended to a scenario such as this. There are the Fourth Circuit and I don't remember the, I can get the citation for rebuttal, but they also similarly have indicated that it should not be extended. There was some dicta in the Seventh Circuit opinion in early v. Packer that we cited that goes, that indicated that it would make sense to extend it, but then they have also more recently, the Seventh Circuit has indicated that the actual reasons given by the state court should be attended to. If the court has no further questions, I'll reserve the remainder of my time. The remainder of your time for rebuttal. Your Honors, and may it please the Court. Linus Banghart Lynn, Assistant Attorney General for the State of Michigan, on behalf of the Respondent Warden, respectfully requesting affirmance. Your Honors, I listened to my sister counsel's introduction and I couldn't find fault with much of it. We do agree on sort of the idea that the district court did get it wrong with what the district court did. But at one point I do have to dispute, which is a slight sort of misstatement of our argument. It's not that without additional evidence he couldn't prove his claim. It's that we have enough evidence to know that this claim is implausible on its face. And that's the difference. And I need to respond to a few things that are in the reply brief. Most importantly, with respect to what happened at the sentencing hearing and with respect to what happened in the Michigan Supreme Court. Now, in the reply brief, so we argue at the sentencing hearing, he's asked point blank, are you happy with the advice your counsel gave you? Mr. Torres says yes. And this is after he alleges he found out about this constitutional deprivation. Sorry, this is at which hearing? At the sentencing hearing. Was this before he was actually sentenced or afterwards? Before he was actually sentenced, right. And that's the argument in the reply brief as well. He wasn't actually sentenced yet, so he didn't really know. The problem is that the gist of the claim doesn't hinge on his actual sentence but on his potential sentence. The constitutional deprivation that he alleges is that he was misinformed as to his potential sentence. So he learns, he alleges, from the probation officer, your potential sentence is triple what you thought it was, right. And so knowing that, he goes into sentencing knowing that and has asked how he feels about his attorney's advice. Now, his reply brief says, well, maybe he wanted to wait and see what he got as a sentence. Well, that destroys the Laffler claim because if you want to ride it out, I know what my potential is. And the reply brief suggests, he says in his reply brief, well, maybe my attorney told me that I could get consecutive sentences but that I probably wouldn't. Well, that's not constitutionally deficient performance. That's just a bad prediction. He knew that he had triple the exposure that he alleges he was told he had. He waited and he got his sentence and that belies, I mean, it contradicts the affidavit. The affidavit says, oh, I'm sorry, Judge. If you could clarify for me. Sure. When you say he knew that he had triple exposure, you're relying on the state probation officer telling him that. And is that in the state probation report? I'm familiar intimately with how the federal thing works but I'm not as familiar with how it works in Michigan. The probation office prepares a pre-sentence investigation report which contains the victim's version of the offense, the police version of the offense, the defendant's version of the offense, the defendant's criminal history, his family situation, all the facts. This is a specific matter of three consecutive sentences. Right. It was in a report. I believe that's correct. We kept all the sentencing information in terms of what the possible sentence is and then what probation recommended sentence is and also what the guideline scoring would be. Is that report in our material? I don't believe that it's in the materials that were filed in the district court. So isn't that something then that the district court should have in front of her in order to resolve, to decide whether or not she should order an evidentiary hearing or whether she can rely on the materials? I don't think it matters because I don't think, I think both sides kind of agree that this is probably, if it's not in, I mean he alleges that he was told in probation about this consecutive sentence and we don't have any reason to disbelieve that. So I mean if that's not true, you know, then that just hurts his credibility, the credibility of his affidavit because that's. He alleges that in. In the affidavit. His affidavit. That is paragraph five of the affidavit and I can give you the page ID number if that's helpful. You have it right there. It's page ID 279. Thank you. So, to say in the reply brief well maybe my attorney told me I could get consecutive sentences, but I probably wouldn't. That contradicts what's in the affidavit because the affidavit says my attorney didn't ever tell me I could get consecutive sentences. So now we've got a statement in the reply brief where Mr. Torres is contradicting his own affidavit. Plus it undercuts the ineffective assistance claim because a mistaken prediction is not constitutionally deficient performance. And then I want to move on to what happened in the Michigan Supreme Court. So we point out in the affidavit he says I would have filed a pro se brief raising this claim in the Michigan Court of Appeals if only I had known that I had the right to file a pro se supplemental brief. And then the reply brief says well maybe I would not have because maybe I didn't understand how to raise this claim. So again, we have a statement in the reply brief which contradicts the affidavit because the affidavit says if I had known of this right, I would have prepared all the issues I have raised in 6500 motion and would have filed a supplement brief. But the reply brief says well maybe I wouldn't have. Even if I had known about this, I might not have prepared this issue. So we've got that contradiction undermines the credibility of the affidavit. Also, if you look at the application that was filed in the Michigan Supreme Court, he's got detailed allegations. He's got state law issues. He's got a Sixth Amendment Strickland ineffective assistance of counsel claim with citing trial transcripts, citing sentencing transcripts, citing case law. He was able to prepare six claims in the Michigan Supreme Court pro per application to say well maybe he wasn't really prepared to prepare this claim in his Supreme Court application. Not only contradicts his affidavit, but also contradicts the evidence that we have in front of us. So just so I'm clear which document we're talking about, you said this is a pro per application to the Michigan Supreme Court in an appeal from which? This is in the direct appeal. The direct appeal. Okay, that was what I thought. Yeah. And so his court of appeals, he alleges his attorney in the court of appeals refused to talk about this issue and also didn't tell him he could file what we call a standard four brief, which is a pro per supplemental brief by a defendant. He alleges that, but he also alleges that if he had known he could file a pro per brief, he would have filed one and not only would he have filed one, he would have raised this issue in it. His reply brief says well maybe he wouldn't have. I think that calls into serious question the credibility of the affidavit. Do you have the citation for that? For the Michigan Supreme Court application? I don't. I'm sorry, I don't have the page ID. It is in the record. It is in the record, yes. It's in the rule five state court materials that the state filed in the district court. They seem to be heavily factual issues and normally we are not the ones to decide those in the first instance. What is the harm in just simply reversing when everybody agrees that the district court was wrong because the Michigan courts were wrong? Right. What's the harm in just sending it back to the district court to sort out? The harm is one of, well for one thing it's one of sort of efficiency and one of resources, especially if, now we don't know if the district court will hold an evidentiary hearing. He never asked for one in the district court and the district court never said it would hold one. It might, as I think you suggested in questioning, simply ask for the state to submit more documents. It's not overly burdensome, but I think it would also encourage the idea that no matter what, I mean you brought up the hypothetical of the Martians have landed. I'm not claiming this is anywhere close to that, but the question suggests there's a line. And I think there is a line and I think this is over the line. And to say that you can kind of just say whatever, you don't have to make an offer of proof, you don't have to have any affidavits from any other witnesses, and what you say in your affidavit can be contradicted by what we have on the record and it can be contradicted with your own arguments that you make later, and yet you still get a chance to develop the record. It's sort of like an automatic entitlement to develop the record, even when you're sort of on the same side of the line as the Martians have landed. I mean, not near it. In most cases, claims of this sort about what was said between a defendant and a lawyer, you're not going to have collateral evidence. Obviously, you directed an argument around the collateral evidence from his other filings, but in saying he doesn't have something to back it up, which is what his lawyer told him, you're not usually going to have that. No, that's true. But, I mean, he could have called his lawyer and he could have said in any of his pleadings. I mean, and this goes back to his diligence, right? I mean, the claim is that it's undisputed that he was diligent. It's absolutely not undisputed and he was absolutely not diligent. He was only diligent if you count from the date of the filing of the motion for relief from judgment in June of 2012. Starting then, he was diligent. That's two and a half years after he supposedly became aware of this constitutional deprivation. Really, your argument is that up until that point, all of his actions, at least by inaction, belie the affidavit. Yeah, some actions and some inactions. I mean, to say at sentencing hearing, are you satisfied with the advice your counsel has given you? That one doesn't move me as much because you go in to get a sentence, you know you're going to get it. You certainly have many defendants that are very obstreperous, but a lot of times they're not. But, basically, you're saying the concatenation of all these things. That's right, your Honor. And it's not undisputed that he was diligent. He did not seek an evidentiary hearing in the state court in the normal way that you would file a motion for a new trial and ask for what we refer to as a Ginther hearing, an evidentiary hearing on ineffective assistance. Didn't, of course, raise it at sentencing when the judge asked him. Didn't raise it in the Court of Appeals. Didn't raise it in the Supreme Court. Waited six months until after the Supreme Court ruled to finally put it in the motion for relief from judgment. From that point on, diligent, but I don't think that you can start counting at that point. I think you have to count, you have to look at when he could have raised this. And lastly, I think I want to push back a little bit on a point made in the reply brief, which is that this petition, that it's somehow significant that this petition survived summary dismissal and that the district court ruled that these claims were not implausible on their face. It's important to remember, the only thing the district court had in front of it when it issued the order requiring response is the petition itself. No state court record at that time. And all the petition says is, ground one, ineffective assistance of counsel during plea negotiations. And that's it. There's nothing else in there. So to say that, I mean, the district court didn't even have the allegations, didn't have the affidavit, didn't know anything. And then also the reply brief says, and the state hasn't ever contested that decision. Well, when we could have, if we could have, we didn't have the state court record because when we're ordered to respond, then we order the state court record from the county court. And so we couldn't dispute it either. All we have is ineffective assistance of counsel during plea negotiations. We have no facts. We have no record, no allegations. So there should be. Do you get the state court record before you file your response? Yes, we do get it before we file our response. But we don't get it in any time to contest the order requiring response, which is what the point is made in the reply brief. So all I'm saying is this court should give zero weight to the idea that we didn't contest the order requiring response and to the fact that the district court ordered a response. Rule 4 review is fairly cursory. You just kind of look at the face of the petition, and if it's not clearly time-barred, even if it is time-barred, they often serve it on us. But if it's clearly time-barred, occasionally they will dismiss something. But typically, it just kind of, well, does it look like a habeas petition? Serve it on the attorney general. So there's nothing to be read into that. I think that covers the points that I'd like to make, and I'd be glad to answer any other questions that Your Honors may have. Thank you, Your Honors. Thank you. First, the state has never contested Mr. Torres's diligence. It also expressly waived in its answer to his petition any procedural default. So to the extent that it's saying that he was dilatory in not raising his claim until the first state collateral proceeding, that's contradicted by its waiver of procedural default. And moreover, I think that this segues to the factual arguments that it's making. So the fact that the state is here, again, asking this court to draw inferences from the face of the record, one way or another, about whether this affidavit is plausible just illustrates that these are factual issues that are best decided by the district court on remand. I think that the state vastly overstates its case when it says that if this claim is allowed to go forward, then every habeas petitioner will be allowed to go forward. There are a number of reasons why that's not true. First, this is just a garden variety plausible ineffective assistance of counsel claim. This is a routine drug offense. There was strong evidence against him. There were two buys made under police supervision by a confidential informant. The police executed a search warrant, found drugs in his residence. And it's a fact that his sentencing exposure, if he went to trial, is three times what he alleges it would have been under the plea deal. So the only rational basis for rejecting that plea offer would have been if he'd been incorrectly advised. I also would point out that this is, again, this is not, in terms of creating precedence, this is an unusual case in that it's undisputed that AEDPA does not apply because there was both no factual finding by the state court and also no procedural default. So in many cases, either if it was never raised in state court, then it will be procedurally defaulted in federal court. If it was raised and disposed of by the state court, then you have the deferential 2254D2 standard applied. What's your goal here if the district court found ineffective assistance of counsel at the plea bargaining stage? Do you want a trial for your client? Or what would be the ultimate goal? If the record revealed that the state had extended the plea bargain and he had rejected it under erroneous advice, I think under Lafler v. Cooper, what's contemplated is that he would have an opportunity to accept that plea deal. You don't know that at all yet, do you? Pardon? Do you know that there is such an offer at some point, or are you just kind of fishing around? Well, we have the affidavit, the sworn affidavit, in which he states that the offer was extended. Again, it's on a common-sense basis. In over 90% of cases, some sort of plea deal is extended, and the state has never denied that a plea offer was extended. It has simply never been asked to respond one way or another on that question. So all the evidence that we have in the record is his affidavit, and that indicates that there was a plea deal. That's the first thing you might find out below is they might say, yes, he's exactly right. They might say, no, here's a copy of the offer that we made, and it's different. Right. Or they might deny it, but we don't know until it goes back. Precisely, and I think rather than engaging in the type of speculation that the state asks this court to engage in about all these factual issues, what it means that he didn't raise it immediately in the 45-day window, less than 45 days that he had to file his pro per pleading, that this court just remand so that the district court can answer all these questions. Thank you very much. These will be submitted.